**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DURIEL KEITH HOLLEY,

    Petitioner,

v.                                              Case No. 8:14-cv-244-T-36MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner Duriel Keith Holley, a Florida inmate proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. 1.) He challenges his convictions entered by the Circuit Court for the Tenth Judicial Circuit, in and for Polk County, Florida. In the response, Respondent does not challenge the petition's timeliness. (Dkt. 6.) Holley filed a reply. (Dkt. 12.) Holley's petition is due to be denied.

## PROCEDURAL HISTORY

A jury convicted Holley of one count of robbery with a firearm (count two) and four counts of aggravated assault with a firearm (counts three through six). (Dkt. 8, Ex. 1, Vol. I, pp. 78-82.)[1] The state trial court sentenced him to concurrent terms of twenty years in prison on count one and five years in prison on counts three through six. (*Id.*, pp. 120-27.) The state appellate court *per curiam* affirmed the convictions and sentences. (Dkt. 8, Ex. 4.) Holley's state petition for writ of habeas corpus, filed in the state appellate court under

---

[1] The state trial court granted a judgment of acquittal on count one, burglary with an assault or battery while armed. (Dkt. 8, Ex. 1, Vol. I, pp. 61, 83.)

Florida Rule of Appellate Procedure 9.141, was denied. (Dkt. 8, Exs. 8, 11.) Holley also filed a motion for postconviction relief under Florida Rule of Procedure 3.850. (Dkt. 8, Ex. 12.) After conducting an evidentiary hearing on two of Holley's five claims, the state postconviction court entered a final order denying his motion. (Dkt. 8, Exs. 15, 16.) The state appellate court *per curiam* affirmed the denial of relief. (Dkt. 8, Ex. 20.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was

contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to

second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court denied Holley relief in *per curiam* decisions without written opinions. These decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 563 U.S. at 181-82. Holley bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

## DISCUSSION

**Ground One**

Holley's convictions resulted from the robbery of a GTE Federal Credit Union branch in Winter Haven, Florida, on the morning of September 12, 2002.[2] Holley argues that the trial court erred in denying his motion for judgment of acquittal, resulting in a federal due process violation. He claims that the State's evidence was insufficient to establish his identity. Specifically, Holley alleges that co-defendant Stacy Sawyer's testimony that Holley participated in the robbery was untrustworthy because Sawyer had provided five different versions of events and admitted to fabricating statements. Holley also asserts that the testimonies of Kenyatta Vasan and Jennifer Smith identifying him as having been with Sawyer and co-defendant Richard Green the day of the robbery did not show he committed any crime and were unreliable because these witnesses knew Sawyer.[3]

At the close of the State's case, counsel moved for a judgment of acquittal.[4] A motion for judgment of acquittal challenges the sufficiency of the State's evidence.[5] The

---

[2] The aggravated assault victims were credit union employees. (Dkt. 8, Ex. 1, Vol. I, pp. 61-62; Vol. II, pp. 230-31; Vol. III, pp. 398, 412-13; Vol. IV, pp. 416-17.)

[3] Holley and Green were tried together. Sawyer testified against them as part of a plea agreement. (Dkt. 8, Ex. 1, Vol. IV, pp. 519-20; Vol. V, pp. 631-33.)

[4] The Court notes that counsel's motion for judgment of acquittal did not allege insufficient evidence of identity, upon which Holley based his appellate claim. (Dkt. 8, Ex. 1, Vol. VI, pp. 810-11; Ex. 2.) But the State's appellate brief addressed the claim's merits, and there is no indication that the state appellate court did not rule on the merits. (Dkt. 8, Exs. 3, 4.)

[5] A habeas petitioner is required to exhaust all state court remedies available for challenging his conviction. 28 U.S.C. § 2254(b)(1)(A). A petitioner must alert the state court to the federal nature of the claim to satisfy the exhaustion requirement. *See Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). When Holley raised this issue on direct appeal, he did not expressly raise a federal claim. (Dkt. 8, Ex. 2, pp. 7-12.) He noted that his case involved both direct and circumstantial evidence. (*Id.*) He also cited *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002), which states Florida's sufficiency of the evidence standard for cases involving direct and circumstantial evidence. This is identical to the federal standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). When state and federal courts utilize the same standard, it may be possible to exhaust a federal claim in state court by
(continued...)

Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970).  In a challenge to a state criminal conviction under § 2254, a petitioner is entitled to relief on an insufficient evidence claim "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Id.* at 318-19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966) (emphasis original)).  "[T]he *Jackson* standard of review is '[e]qually applicable to direct or circumstantial evidence.'" *Martin v. Alabama*, 730 F.2d 721, 725 (11th Cir. 1984) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1358 (11th Cir. 1982)).

If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).  Accordingly, federal courts must defer to the judgment of the jury in assigning credibility to witnesses and weighing the evidence. *Id. See also Machin v. Wainwright*, 758 F.2d 1431, 1435 (11th Cir. 1985) (a federal habeas court must presume that the jury resolved conflicting inferences from the evidence in favor of the prosecution).

---

[5](...continued)
raising an analogous state claim.  See *Mulnix v. Sec'y, Dep't of Corr.*, 254 Fed. App'x 763, 764-65 (11th Cir. 2007).  Following *Mulnix*, the Eleventh Circuit Court of Appeals raised doubt that a petitioner can exhaust a federal sufficiency of the evidence claim in this manner, but did not decide this issue.  *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F3d 449, 459-60 (11th Cir. 2015).  Therefore, Holley's federal claim is treated as having been exhausted.

Sawyer testified that he met Holley through friends in Orlando and that Holley wanted to be involved in the robbery because he needed money. (Dkt. 8, Ex. 1, Vol. IV, pp. 486-87, 489.) He identified Holley as having participated in the robbery with him. (*Id.*, p. 516.) Sawyer testified that he waited in the car while Holley and Green went inside, and that Holley was wearing a black leather jacket and blue latex gloves. (*Id.*, pp. 500, 502, 509.)[6]

Sawyer's girlfriend at the time of the offenses, Kenyatta Vasan, testified that she was with Sawyer, Green, and a third man she did not know on the morning of the robbery. Vasan stated that the three men dropped her off outside a hotel room. (Dkt. 8, Ex. 1, Vol. II, pp. 179-80.) Sawyer's father, Gregory Williams, and his then-girlfriend, Jennifer Smith, were present. (*Id.*, p. 181.) The men returned approximately half an hour later and changed clothing in the hotel room. (*Id*, pp. 218-19; Vol. III, pp. 256-57.) Vasan and the men then drove to Orlando, where they dropped off the third man. (Dkt. 8, Ex. 1, Vol. III, pp. 260, 266.) Before they dropped him off, Vasan heard him talking with Sawyer. Their conversation led her to conclude that they had just robbed a bank. (*Id.*, pp. 263-65.) When Vasan was later questioned by Sergeant Brian Lieberman, she immediately identified Holley's picture from a photo pack as that of the third man. (*Id.*, p. 272; Vol. V, p. 708-09, 739, 741.) Vasan was completely sure in her identification. (Dkt. 8, Ex. 1, Vol. V, pp. 740-41.)

Smith testified that she observed Vasan, Sawyer, Green, and a third man she did

---

[6] Through cross examination by attorneys for Holley and Green, the jury knew that Sawyer made inconsistent statements about the events. (Dkt. 8, Ex. 1, Vol. IV, pp. 516-636; Vol. V, pp. 770-86.) In particular, the jury heard that Sawyer once told the State Attorney's Office that Holley was not involved in the robbery. (Dkt. 8, Ex. 1, Vol. IV, pp. 635-36; Vol. V, pp. 771-86.)

not know at the hotel on the morning of the robbery. (Dkt. 8, Ex. 1, Vol. III, pp. 322-23.) She testified that the men left and returned about half an hour later, that they were wearing heavy clothing, and that they changed out of their "extra sweatshirts" after going into the hotel room. (*Id.*, pp. 324-25, 375-76.) She stated that the third man wore blue gloves. (*Id.*, p. 360.)[7] When Lieberman showed her a photo pack, she identified Holley as the third man with "90%" certainty. (Dkt. 8, Ex. 1, Vol. V, pp. 739-41.) Williams also identified Holley as the person he saw at the hotel when Lieberman showed him the photo pack. (*Id.*) Williams was "100%" certain in his identification. (*Id.*, p. 741.)

The State must prove identity beyond a reasonable doubt. *Davis v. State*, 438 So.2d 973, 974 (Fla. 2d DCA 1983). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 433 U.S. at 319 (emphasis original). *See also Westbrooks v. State*, 145 So.3d 874, 877("Generally, a motion for judgment of acquittal should be denied "[i]f, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt.") (quoting *Pagan*, 830 So.2d at 803).

Construing the evidence in the light most favorable to the prosecution, it was sufficient to overcome an argument that the State failed to prove Holley's identity. Holley has not demonstrated trial court error resulting in a due process violation. Accordingly, he fails to show that the state appellate court's rejection of his claim was contrary to or an

---

[7] Witnesses in and around the credit union testified that the robbers wore blue latex gloves and dark clothes, and described them as wearing long sleeves, jackets, or sweatshirts. (Dkt. 8, Ex. 1, Vol. II, p. 234, Vol. III, pp. 242, 401, 418; Vol. IV, pp. 422, 440, 448, 450, 456.)

unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. Holley is not entitled to relief on Ground One.

**Grounds Two Through Four: Ineffective Assistance Of Counsel**

Claims of ineffective assistance are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Holley must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA."). If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.")

Claims of ineffective assistance of appellate counsel are also analyzed under the two-part test set forth in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim, Holley must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, Holley would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

**Ground Two**

Holley alleges that appellate counsel was ineffective for failing to argue that the trial

court committed fundamental error[8] in providing the jury instructions. He contends that the instructions improperly contained the "and/or" conjunction between his name and Green's name and "generalized" the term "defendant."

When Holley raised this claim of ineffective assistance in his state habeas petition, he presented the question of whether the jury instructions were proper as one of state law. In alleging that the jury instructions violated his right to an individualized verdict, Holley only cited Florida authority. (Dkt. 8, Ex. 8.) He did not assert any underlying federal constitutional violation not raised by counsel. (*Id.*)

In rejecting his claim, the state appellate court has conveyed that a claim alleging fundamental error in jury instructions would have failed. Deference must be given to the state court's determination of Florida law. *See, e.g., Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law]–the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not

---

[8] Because trial counsel did not contemporaneously object to the jury instructions (Dkt. 8, Ex. 1, Vol. VI, pp. 815-26, 942-65), appellate counsel would have been limited to raising fundamental error. *See State v. Delva*, 575 So.2d 643, 644 (Fla. 1991) ("[Jury] [i]nstructions . . . are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred.").

ineffective for failing to make that objection."). *See also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.").

Holley has not shown that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Ground Two warrants no relief.

**Ground Three**

Holley states that he could not have committed a robbery in Winter Haven on the morning of September 12, 2002, because he was in Orlando. Holley asserts that he and Tamika Smith Robinson were studying for their college exams in the presence of Shana Howard, his then-girlfriend. He argues that trial counsel was ineffective for failing to "investigate, contact, and depose" Howard and Robinson and set forth an alibi defense. (Dkt. 1, p. 9.)

> After conducting an evidentiary hearing, the state court denied this claim:
>
> Defendant asserts that [counsel] rendered ineffective assistance of counsel by failing to call alibi witnesses. At the Hearing, Defendant testified that he repeatedly asked [counsel] to call alibi witnesses on his behalf, including Tamika Smith, now Tamika Robinson, and Shana Howard, but [counsel] never did so. Ms. Robinson testified that she had never been contacted by an attorney in the instant case prior to being contacted about testifying in regard to the pending Motion. [Counsel], whom this Court finds credible, testified that Defendant specifically asked him not to contact Ms. Howard because he did not want her involved, even though she was available to testify. [Counsel] also stated that he attempted to contact Ms. Robinson but was unable to locate her prior to the trial. Again, Defendant fails to establish prejudice under Strickland. Therefore, claim 2 is DENIED.

(Dkt. 8, Ex. 16, pp. 143-44.)

The record supports the state court's rejection of Holley's claim. Counsel testified

that Holley specifically directed counsel not to involve Howard in this case. (Dkt. 8, Ex. 15, pp. 114-15, 116, 127.) Therefore, counsel followed Holley's instructions in not calling Howard. The court's determination that counsel's testimony was credible is presumed correct. *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]."), *cert. denied*, 526 U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995).

Moreover, Holley's claim about Howard is speculative because he did not provide an affidavit of Howard or call her to testify at the evidentiary hearing. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted); *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir.1985)). Speculation cannot sustain an allegation of ineffective assistance. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Finally, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [a reviewing court] will seldom, if ever,

second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Holley has not shown that counsel was ineffective with respect to Howard.

Counsel also told the court that he unsuccessfully attempted to contact Robinson and that, despite being out on bond for about a year prior to trial, Holley did not bring Robinson to talk to counsel. (*Id.*, pp. 115, 128.) Holley does not overcome the presumption of correctness applied to the state court's finding that counsel's testimony was credible. Furthermore, while Robinson testified at the evidentiary hearing that she remembered studying with Holley on the morning of September 12, 2002, the State impeached her with her postconviction deposition testimony, in which she stated multiple times that she could not remember the date with certainty. (*Id.*, pp. 100-01,105-08.) Under these circumstances, Holley has not shown that counsel was ineffective with respect to Robinson, or that he suffered prejudice as a result of counsel's performance.

Holley fails to demonstrate that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Three. [9]

**Ground Four**

Holley argues that trial counsel was ineffective for failing to adequately advise him

---

[9] Holley stated in his postconviction motion that counsel was ineffective for failing to set forth an alibi defense and investigate, contact, and depose witnesses. (Dkt. 8, Ex. 12, p. 29.) He alleges in his federal habeas petition that the state court mischaracterized his claim as alleging that counsel was ineffective for failing to call witnesses. Quoting from Holley's motion, the state court identified the claim as ineffective assistance for failing to "investigate, contact, depose potential alibi witnesses that had exculpatory testimonies about the whereabouts of the Defendant." (Dkt. 8, Exs. 13, 16.) Additionally, while the final order of denial phrases the claim as ineffective assistance for failing to call witnesses, Holley argued at the evidentiary hearing that he was prejudiced by counsel's failure to present an alibi defense to the jury through the testimony of Howard and Robinson. (Dkt. 8, Ex. 15, pp. 133-35.) Holley has not shown that the state court failed to rule on the claim he presented. Even if it had not and *de novo* review was appropriate, *see Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003), the claim would fail as being without merit.

of his right to testify and for threatening and coercing him not to testify. The state court denied relief after the evidentiary hearing:

> Defendant claims that he repeatedly told [counsel] that he wanted to take the stand in his own defense. He claims that [counsel] responded by telling him that he could not take the stand and, if he tried to do so, [counsel] would abandon him mid-trial. [Counsel], whom this Court finds credible, testified that Defendant did not want to take the stand, even though [counsel] wanted to put him on the stand. The State submitted as evidence a written note passed from Defendant to [counsel] asking if it were important for Defendant to testify, to which [counsel] responded, in writing, that it was not necessarily important but that [counsel] would like Defendant to testify any way in order to clear up an issue about outstanding warrants. Defendant's claim does not stand up under Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, in order to succeed in a claim of ineffective assistance of counsel, a defendant must demonstrate that Counsel made an error outside the range of professional standards and that Defendant was prejudiced by that error. Id. at 690, 694. Here, Defendant has not effectively demonstrated any error on [counsel's] part. In fact, the only tangible evidence in this matter refutes Defendant's claim. Therefore, claim 1 is DENIED.

(Dkt. 8, Ex. 16, p. 143.)

At the evidentiary hearing, Holley conceded that counsel informed him of his right to testify. (Dkt. 8, Ex. 15, p. 82.)[10] Counsel denied threatening Holley or telling him he would abandon him, and stated that he wanted Holley to testify at trial but that Holley chose not to do so. (Id., pp. 116, 122-24, 131.)[11] Again, the state court's finding that counsel's

---

[10] Although Holley argues that counsel did not "adequately" inform him of his right to testify, he does not state how counsel's explanation of his right was insufficient.

[11] Counsel testified about the note Holley wrote during trial:

Q.   Okay. And the note specifically says, "As of right now is it important for me to take the stand?" That could mean basically anything, couldn't it?

A.   It depends on the context you look at it, but I know - -

Q.   It doesn't specifically state, "I don't want to take the stand" does it?

A.   No, it doesn't.

(continued...)

testimony was credible is presumed correct, and Holley has not overcome this presumption of correctness. Thus, the record supports the state court's finding that counsel did not perform deficiently because he did not misadvise Holley of his right to testify, or threaten or coerce Holley into waiving this right.

Holley has not shown that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Four.

Any claims not specifically addressed herein have been found to be without merit.

It is therefore

**ORDERED** that Holley's petition (Dkt. 1) is **DENIED**. The Clerk is directed to close this case and to enter judgment against Holley.

It is further **ORDERED** that Holley is not entitled to a certificate of appealability (COA). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a COA. *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Holley "must demonstrate that reasonable jurists would find the district court's assessment of the

---

[11](...continued)
Q.   And you can't necessarily extrapolate that from that, could you?

A.   Based upon what I know, yes, I can. That's based upon the conversations I had with him prior to him asking that question as well as after him asking that question.

Q.   Okay. But the way this is written it doesn't appear that way, does it?

A.   It depends on how you look at it.

(Dkt. 8, Ex. 15, pp. 130-31.)

constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Holley has not made this showing. Finally, because Holley is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

   **ORDERED** in Tampa, Florida, on March 16, 2017.

*[signature: Charlene Edwards Honeywell]*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Duriel Keith Holley
Counsel of Record